IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| *In re:* | ) |
| | ) |
| CLEARWATER DEVELOPMENT, INC. | )   Chapter 11 |
| EIN:  20-1538160 | )   Case No. 11-18725 HRT |
| | ) |
| *Debtor.* | ) |

**CLEARWATER DEVELOPMENT, INC.'S MOTION FOR ENTRY OF ORDER APPROVING RETENTION OF CHIEF RESTRUCTURING OFFICER**

Clearwater Development, Inc., debtor-in-possession ("*CDI*"), by and through its counsel, Connolly, Rosania & Lofstedt, P.C. ("*CR&L*"), submits this Motion for Entry of Order Approving Retention of Chief Restructuring Officer.  In support hereof, CDI states as follows:

1. CDI, a Colorado corporation, filed a Chapter 11 bankruptcy proceeding on April 18, 2011 (the "*Petition Date*").  CDI continues to maintain possession of its property and operate its business as debtor-in-possession Pursuant to 11 U.S.C. Sections 1107 and 1108.  To date, no creditors committee has been appointed in this Chapter 11 case.

2. CDI owns a 963 acre golf course real and estate development near Gypsum, Colorado (the "*Property*").  The Property includes a real estate development known as the Brightwater Club, an 18-hole golf course, and a gated community with 535 home sites.  The Property is located in the Gypsum Creek Valley 35 miles from Vail, Colorado.

3. CDI filed Chapter 11 in order to sell its assets for the highest and best price as a going concern as expeditiously as possible.

4. The Brightwater Club began in 2005.  It has 95 acres of dedicated open space for hiking and fishing and 25 acres of lakes and streams.  It has The Lake House for casual dining and The Cast Off Cabin, a secluded retreat on Gypsum Creek, for fly fishing or reading.

5. CDI had 195 home site sales in its first 2 and 1/2 years from buyers from 18 states.  The initial sales prices and volume exceeded the pro forma by 75%.

6. The Brightwater Club golf course, designed by Robert Trent Jones, Jr., opened the front nine holes in 2008 and has not been open for play in 2009 or 2010. The Property includes an 18-hole putting course and extensive practice area.

7. The Property which is the subject of this case includes 50 finished single family home sites, 65 partially finished single family home sites, 225 entitled single family home sites, completed 18 hole Robert Trent Jones Jr. golf course, completed 18 hole putting course, 25 acres of lakes, significant water rights, Cast off cabin, Lake House Restaurant and Club and all entitlements, permits and development rights.

8. CDI experienced difficulties in 2006 when developer financing was suspended forcing a halt in home site and amenity development due to cost overruns and lender issues. The sales momentum was slow to recover due to the halt in development despite bridge financing and a new development loan in 2007.

9. Then, the 2008 real estate and financial markets meltdown stopped all sales and development. The cost of the Property was approximately $60,000,000, it was appraised at the time of the loan at $100,000,000 and current value is approximately $8,000,000.

10. The Property is subject to a first and perpetual lien in favor of Eagle County, Colorado for unpaid real property taxes in the amount of approximately $1,400,000, and mechanics lien claims in the total amount of approximately $1,700,000, plus attorneys fees and interest, for which such mechanics' lien claimants hold a judgment from Eagle County District Court determining the principal amount of such mechanics lien claims are superior to the claims of the consensual lienholders.

11. Some of the Property is subject to judicial and statutory liens in favor of the Brightwater Property Owners Association ("POA") for an aggregate debt in the amount of approximately $230,000.

12. The Property is also subject to a syndicated loan and first deed of trust (the "*Loan*"). The outstanding balance on the Loan is approximately $37,800,000 in principal and $20,000,000 in default interest. The current participating lenders holding lender interests in the Loan and their approximate ownership interests are, to CDI's knowledge (collectively the "*Lenders*"): (i) KD8 LLC (43.53%); (ii) Brookline Financing, LLC (47.04%); (iii) Sharon Berger (0.5%); (iv) WVM Group, LLC (0.5%); (v) J.K.G. Financing, Inc. Defined Benefit Plan (2.0%); (vi) Murray L. Beer Family Trust (4.0%); (vii) MMR Funding, LP (2.0%); and (viii) Flug Funding, Inc. (0.43%). CDI is further informed and believes that the interest of Brookline Financing, LLC ("*Brookline*") is held by Fortis Bank S.A./N.V.("*Fortis*") as collateral for a loan by Fortis to Brookline to secure funding used by Brookline to acquire its interest in this Loan and other loans. CDI is informed and believes that Kennedy Funding, Inc. is the servicing agent for the Loan.

13. CDI has been unable to agree on any restructuring strategies or effectively communicate with the Lenders over the last eighteen month period. The inability of CDI and the Lenders to effectively communicate and agree on a restructuring has created a negative cloud over CDI and the Brightwater Club. Property and prospective property owners are anticipating a foreclosure or restructuring that has not occurred and there have been piecemeal foreclosure sales of lots.

14. CDI has received an offer to purchase substantially all of its assets from Reconcile, LLC ("*Reconcile*"). Russ Hatle ("*Hatle*"), (who directly or indirectly owns stock in CDI), and Jim Higgins ("*Higgins*") have a minority interest in Reconcile. Hatle and Higgins also have a minority interest in a second entity, Hearthstone Investors, LLC ("*Hearthstone*"), which has raised funds to be loaned to Reconcile to complete the sale.

15. Accordingly, prior to filing bankruptcy, CDI entered into an agreement with Weston Capital Corporation ("*WCC*") pursuant to which James DeFrancia ("*DeFrancia*") was appointed the Chief Restructuring Officer (the "*CRO*") of CDI, as part of CDI's restructuring efforts. A copy of the agreement is attached hereto as **Exhibit A**.

16. In this motion, CDI seeks entry of an order approving the retention of DeFrancia as the CRO. CDI has determined that retention of DeFrancia is in the best interest of its estate.

17. DeFrancia is the president of WCC. WCC is a privately held firm, engaged in asset management and development on behalf of private investors, banks, government agencies and insurance companies. DeFrancia is experienced in receivership responsibilities and associated reorganization and restructuring efforts with resort and residential projects. In addition, through his receivership engagements, he is familiar with the processes of the US Bankruptcy Court and applicable elements of the Bankruptcy Code. In his capacity as CRO, DeFrancia's experience in real estate development and in dealing with troubled assets and restructuring of projects will assist CDI in proceeding forward with a liquidating plan. A copy of DeFrancia's resume is attached hereto as **Exhibit B**.

18. CDI has granted DeFrancia primary authority with respect to the following tasks:

- Supervise the daily operations of the Brightwater development, including but not limited to the hiring and firing of employees;

- Supervise the cash management of the Company;

- Manage, direct and implement any marketing process for the Company's assets;

- Solicit, evaluate, negotiate and accept proposals involving new capital, other potential investors or offers to purchase the assets of the Company;

- Manage and oversee the Company's compliance with all bankruptcy related reporting and disclosure requirements as part of the bankruptcy filing;

- Manage and oversee the Company's compliance with all Federal and State tax laws;

- Engage, assist and supervise the Company's legal counsel(s) and other professionals throughout the retention period;

- Assess the company's long-term viability and business strategy;

- Review, negotiate and execute Clearwater's agreements with its lenders, including any negotiations and agreements for post-petition financing

- Negotiate with Clearwater's lenders and lien-holders where appropriate;

3

- Assist in presenting proposals to and leading negotiations with the lenders and lien-holders; and

- Other services reasonably required in connection with the foregoing.

It is anticipated that DeFrancia will eventually become CDI's sole officer and director. DeFrancia will be compensated at a base salary of $10,000 per month and an hourly rate of $200.00 per hour for services in excess of 50 hours per month and will be reimbursed for any appropriate out-of-pocket expenses. CDI shall compensate DeFrancia from its operating capital obtained from the debtor in possession financing. DeFrancia will act on an as-needed basis. Other employees of WCC may be assist DeFrancia as necessary. DeFrancia's fees and expenses will be subject to Court approval and to any interim fee procedure order entered by the Court.

19. DeFrancia will not be retained as a professional subject to Bankruptcy Code §327(a), and CDI does not believe court approval is necessary for his retention. However, in the interests of full disclosure to creditors and to avoid later disputes or misunderstandings, CDI seeks approval of his retention as described herein.

20. Prior to his engagement and as stated in the letter agreement, DeFrancia did a conflicts check and to the best of his knowledge believed that neither WCC nor he held or represented any interest adverse to CDI's estate or any other party in interest.

21. CDI brings this motion seeking a determination that CDI may continue to retain DeFrancia as the CRO in the ordinary course of its business, or alternatively, that CDI's retention of DeFrancia is a reasonable exercise of its business judgment pursuant to § 363(b).

**WHEREFORE**, CDI requests that the Court enter an Order authorizing the retention of DeFrancia as its CRO, effective as of the Petition Date and grant such other relief as is just and equitable.

Dated: April 20, 2011.	Respectfully submitted,

CONNOLLY, ROSANIA & LOFSTEDT, P.C.

By:	*/s/ Joli A. Lofstedt*
	Joseph G. Rosania, Esq. #12499
	Joli A. Lofstedt, Esq. #21946
	Douglas C. Pearce, II, Esq. #28786
	950 Spruce Street, Suite 1C
	Louisville, Colorado 80027
	(303) 661-9292
	(303) 661-9555 – fax
	joe@crlpc.com
	joli@crlpc.com
	doug@crlpc.com

*Attorneys for Debtor*

4

# EXHIBIT A


Weston Capital Corporation

Letter of Engagement for Management Services

Clearwater Development Inc.

1. Introduction

   This letter confirms that we, Weston Capital Corporation ("WCC"), have been retained by you, Clearwater Development, Inc. ("Clearwater" or the "Company"), to provide certain financial advisory and interim management services (the "Services") set out below. This letter of engagement (the "Engagement") and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

2. Scope of Services

   The Services to be provided by WCC will be performed by the following:

   - James M. DeFrancia ("JDeF") to serve as the Chief Restructuring Officer (the "CRO") of the Company. In the capacity of CRO, JDeF will enjoy the same full and free access to the Board of Directors and its Committees as other members of the senior management of the Company as specified in the corporate governance guidelines of the Board of Directors and will have the right to notice of and to attend and participate in (but not vote except where required as a provisional director) the meetings of the Company's Board of Directors, or its Committees as an observer (it being understood that the Board of Directors of the Company may from time to time meet in "executive session" or otherwise ask that certain or all non-directors not attend such meeting or a portion thereof). The CRO shall be considered to stand within the attorney-client privilege among or between the Company and its counsel.

   - Additional Employee Consultants if and as required to support JDeF in the provision of his services.

   JDeF and the Additional Employee Consultants are retained and authorized to provide the following services on behalf of the Company:

   - Supervise the daily operations of the Brightwater development, including but not limited to the hiring and firing of employees;
   - Supervise the cash management of the Company;
   - Manage, direct and implement any marketing process for the Company's assets;
   - Solicit, evaluate, negotiate and accept proposals involving new capital, other potential investors or offers to purchase the assets of the Company;
   - Manage and oversee the Company's compliance with all bankruptcy related reporting and disclosure requirements as part of the bankruptcy filing;
   - Manage and oversee the Company's compliance with all Federal and State tax laws;
   - Engage, assist and supervise the Company's legal counsel(s) and other professionals throughout the retention period;

P.O. Box 12393 • Aspen, Colorado 81612-9207 • 970 544-8900 office • 970 230-1123 cell • JDeFrancia@hotmail.com

Exhibit A

- Assess the company's long-term viability and business strategy;
- Review, negotiate and execute Clearwater's agreements with its lenders, including any negotiations and agreements for post-petition financing
- Negotiate with Clearwater's lenders and lien-holders where appropriate;
- Assist in presenting proposals to and leading negotiations with the lenders and lien-holders; and
- Other services reasonably required in connection with the foregoing.

Such services, as outlined above, do not include the following categories of "Excluded Services:" (1) any written opinion regarding a transaction, including a "fairness opinion," solvency opinion or expert valuation opinion; (2) tax analysis to support an amendment or restructuring; (3) preparation of accounting/audit reports or tax returns for the Company; (4) any expert testimony in any proceeding related to a transaction; and (5) accounting services to prepare for a bankruptcy filing and/or prepare the required statements and schedules required in a bankruptcy (although JDeF will oversee the Company's employees and legal counsel in their preparation). Should such services become necessary, WCC has authority to engage such professionals or others as are necessary to complete such services, including engaging the services of Additional Employee Consultants.

The Services will be primarily performed by JDeF. WCC is also authorized to provide Services through its or its subsidiaries' agents or independent contractors as deemed necessary. References herein to WCC and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

As part of the Services, WCC is authorized to assist the Company (and its legal or other advisors) in negotiating with the Company's creditors and equity holders and with other interested parties.

Promptly upon filing bankruptcy, WCC will cause the Company to seek approval of this Engagement Contract.

The services we will provide in connection with the Engagement will encompass all services normally and reasonably associated with this type of engagement that we are requested and are able to provide and that are consistent with our ethical obligations.

Our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders.

3. Fees

CRO Monthly Fee
For services rendered in connection with this assignment, the Company agrees to pay WCC a monthly, non-refundable retainer of $10,000 based upon an hourly billing rate of $200 per hour (and therefore equivalent to 50 hours of service). Payment of such retainer fee is due and payable on the first business day of each month, with pro-rations where appropriate.

In addition, the Company will pay in arrears for any hours in excess of 50 per month at the cited hourly rate.

Hourly Rates

It is understood and agreed that the Additional Employee Consultants are not being engaged to supplement the existing and fully-staffed executive and management staff of the Company and are not included in the CRO Monthly Fee. In the event that the Company and WCC jointly determine it to be advisable to increase the size of the WCC team by adding Additional Employee Consultants, then WCC shall be compensated for providing the services of such Additional Employee Consultants at its standard hourly rates for professionals having the experience and expertise necessary to fulfilling the Company's needs. This may include providing WCC professionals to provide expert testimony on issues that may arise during the scope of the engagement.

Our standard hourly rates are summarized as follows:

|  | Per Hour |
|---|---|
| Vice Presidents | $150 |
| Administrative / Paraprofessionals | $100 |

Hourly rates are generally revised periodically.

In addition to the fees outlined above, WCC will bill for reasonable direct expenses which are likely to be incurred on behalf of the Company during this Engagement. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement. Further, if WCC and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, WCC will bill for such testimony or evidence at its regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto.

WCC's fees and expenses may not be paid without the express prior approval of the bankruptcy court. WCC is authorized to file on behalf of the Company a request to establish interim fee procedures for the payment of WCC's and other professional's fees expenses during the case.

4. **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.



5. **Conflicts of Interest**

Based on the list of interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine WCC professional relationships with the Company, its lenders and lienholders.

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices throughout the United States. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. We will not knowingly accept an engagement that directly conflicts with this Engagement without your prior written consent.

6. **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the attached Standard Terms and Conditions and returning a copy of each to us at the above address.

Yours truly,

By: _____
James M. DeFrancia, President

Attachment – As stated

Confirmation of Terms of Engagement

We agree to engage Weston Capital Corporation upon the terms set forth herein and in the attached Standard Terms and Conditions.

Clearwater Development, Inc.

By: _____
Russ Hatle
President

Date: 4/18/11

## STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached Letter of Engagement with Clearwater Development, Inc. dated April 15, 2011. The Engagement letter and the Standard Terms and Conditions (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

1. **Information and Assistance**

1.1 **provision of information and assistance** – Our performance of the Services is dependent upon the Company providing us with such information and assistance as we may reasonably require from time to time.

1.2 **Punctual and accurate information** – You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

1.3 **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

1.4 **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated in the management of the Company.

2. **Additional Services**

2.1 **Responsibility for other parties** –Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.

3. **Confidentiality**

3.1 **Restrictions on confidential information** – Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's consent except as required in the bankruptcy proceedings. Confidential information shall not include information that:

   3.1.1 is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

       **3.1.2**    is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

       **3.1.3**    is or has been independently developed by the recipient.

**3.2**    **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement).

**3.3**    **Maintenance of work papers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information.

**4.**    **Termination**

**4.1**    **Termination of Engagement with notice** – Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. You will be responsible for all fees and expenses incurred by us through the date termination notice is received.

**4.2**    **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

**5.**    **Indemnification and Liability Limitation; Waiver of Jury Trial**

**5.1**    **Indemnification** – The Company agrees to indemnify and hold harmless WCC and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to the retention of WCC, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted.

       **5.1.1**    WCC will include James M. DeFrancia (and any other employee of WCC engaged related to this case. The Company agrees to also maintain insurance coverage for James M. DeFrancia for a period of not less than two (2) years following the date of termination of such employee's services hereunder.

       **5.1.2**    None of WCC employees serving as an Additional Employee Consultants will be entitled to receive from the Company any salary, bonus, compensation, vacation pay, sick leave, retirement, pension or social security benefits, workers compensation, disability, unemployment insurance benefits or any other Company employee benefits. WCC will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business (including those related to James M. DeFrancia and any Additional Employee Consultant).



5.2     Limitation of liability – The Company agrees that no Indemnified Person shall have any liability as a result of WCC's retention, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, other than liabilities that shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

5.3     WAIVER OF JURY TRIAL – TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, THE COMPANY AND WCC IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH OTHER MATTER.

6.     Governing Law and Jurisdiction-The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of Colorado without giving effect to the choice of law provisions thereof. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction

*Confirmation of Standard Terms and Conditions*

We agree to engage Weston Capital Corporation upon the terms set forth in these Standard Terms and Conditions as outlined above.

Clearwater Development, Inc.

By: _____
     Russ Hatle
     President

Date: 4/18/11

# EXHIBIT B

# JAMES M. DeFRANCIA

## PROFESSIONAL & MANAGEMENT EXPERIENCE

- (1978-present) **President of Weston Capital Corporation**, a privately held firm, engaged in asset management and development on behalf of private investors, banks, government agencies and insurance companies. Focus on directing government relationships and entitlements, construction of infrastructure, management of community services, and leasing and sales efforts. Significant current engagements as fiduciary for receiverships and restructuring of distressed projects include:
    - **Receiver & Manager of DB Capital Holdings LLC** and affiliated entities. Appointed by District Court of Colorado.
      Managing a $60 million fractional share asset, including construction completion, sales/marketing, hospitality operations, and resolution of litigation issues.
    - **Receivership Manager of Base Village Owner LLC.** Appointed by the District Court of Colorado.
      Managing Director for Corporate Receiver of a $386 million mixed use asset located at base of Snowmass, CO, ski area.
      Responsibilities include completion of construction, asset management of 173 key Viceroy Hotel, oversight of Metropolitan District, retail leasing and management, Association oversight and management, condominium sales, and entitlement modifications with municipal government.
    - **Receiver & Manager of Colorado Main LLC.** Appointed by the District Court of Colorado.
      Managing a partially completed residential townhome project in Carbondale, CO. Loan value of $7 million. Directing construction completion; homeowner association operations; sales/marketing; and tenant leasing/relations; and entitlement issues with local government.
    - (1999 to 2004) **Receiver & Manager of Shanghai Links Executive Community Inc.**, a British company holding land use rights in China and actively engaged in community development in Shanghai. Served by appointment of the Courts of the United Kingdom. Responsible for the management of leasing and sales activities, residential construction, infrastructure improvements, operation of private utility systems (water and sewer), security and transportation operations, and all other aspects of community services. Managed complex arbitration and litigation proceedings in both China and the United Kingdom.

- (1980-2009) **Principal of Lowe Enterprises, Inc.**("Lowe") a privately held U.S. real estate development company engaged nationally in residential, commercial and resort development and asset management. Participated in management oversight of:
    - $3+ billion in fiduciary assets.
    - operations for $2+ billion of commercial and residential development projects.
    - operations of 5th largest independent hospitality management company, with over 6,000 hotel rooms and $1.7 billion in assets (Lowe's Destination Hotels & Resorts subsidiary)

- (1997 – 2009) **President of Lowe Enterprises Community Development Inc.**, a Lowe subsidiary, based in Colorado.
    - Responsible for development of large-scale mixed use projects internationally.
    - Managed the development of over 20,000 residential units, as well as office and retail product, and infrastructure and services, in planned communities

- (1973 – 1978) **President of ITT Levitt Homes/Puerto Rico** and then **Assistant to the Executive Vice President, ITT Corporation** in New York.

- Directed operations for both land development and construction and sale of approximately 1,000 housing units per year.
- Concurrently served as CEO of Isabela Construction Company, a 200-employee general contracting subsidiary of ITT.
- Responsible for the operations of another ITT subsidiary, Mid-West Funding Corporation, a mortgage banking firm that provided all the permanent financing for home sales.
- Responsible for several other ITT subsidiary development companies, both nationally and internationally. Directed disposition of major land assets and development subsidiaries of ITT

- (1970 – 1973) **General Manager for Multi-National Private Investor Group**, Caracas, Venezuela.
    - Directed operations for a real estate company engaged in developing a planned community of low-cost housing in Venezuela financed through the AID program with U.S. funding sources.

## EDUCATION

- Graduate of the **U.S. Naval Academy** at Annapolis - B.S. Degree in Engineering
- Completed "Strategy & Policy", " Command & Staff", "Employment of Naval Forces" and "Defense Economics" courses at **Naval War College**
- Executive program studies in business and finance at the **University of Michigan** and the **Wharton School (U. of PA)**

## MILITARY SERVICE

- Served as a regular **officer** in the **U.S. Navy**

    - Vietnam veteran; duty with Headquarters, Naval Support Activity, Saigon;
    - Aide to the Commanding Rear Admiral of Naval Supply Center, San Diego
    - Temporary duty with the Office of the Chief of Naval Operations;
    - Duty at the U.S. Embassy, Caracas, Venezuela.
    - Various duties both domestically and abroad as Reserve officer
    - Retired as Commander (SC), USNR
    - Awarded several military decorations

## PUBLIC SERVICE & POLITICAL EXPERIENCE:

Service on many government and political commissions, committees and boards, as well as elected municipal office, including:

Elected

**Board of Selectmen** (Weston, CT)

Appointed

**Secretary of the Navy Advisory Panel (Nominated by White House and appointed by Secretary of Defense** to advise on maritime strategy in the Far East as well as energy efficiency in the Fleet and conversion from fossil fuel use)

**Defense Science Board Task Force (Appointed by Secretary of Defense** to a Task Force on privatization efforts in DOD)

**DOD Marsh Panel (Appointed by Secretary of Defense** to specifically contribute development expertise in restructuring the military housing system)

**Housing Advisory Group to Committee on Banking, Finance and Urban Affairs, U. S. House of Representatives**

**Metropolitan Washington Airports Authority** (former Director)
**Planning & Zoning Commission** (Aspen, CO)
**Southern Growth Policies Board**
(Appointed by the Governor as Virginia Representative)
**Virginia Commission on Poverty**
**Highway Safety Commission** (VA)

PRIVATE SECTOR BOARDS & COUNCILS:

Service on many educational, business, and civic boards and councils including:

**Aspen Historical Society** (Director)

**Aspen Public Radio** (former Director)

**Atlantic Council of the United States** (Senior Councilor)

**Atlantic Gulf Communities Corporation** (former Director)

**Bluemont Concert Series** (former Director)

**Catholic University of Puerto Rico** (Advisory Council)

**CityNet Telecommunications, Inc.** (former Realty Board Member)

**First Commercial Bank of Virginia** (former Director)

**George Washington University** (Advisory Council)

**Greater Atlantic Savings Bank** (former Director)

**Loudoun Economic Development Advisory Committee**

**National Association of Home Builders** (former National Director)

**Naval Academy Class Foundation** (Treasurer)

**Northern Virginia Banking Corporation** (former Director)

**Shenandoah University** (Advisory Council)

**Urban Land Institute (Life Trustee** and former **Vice Chairman)**

**U.S. Naval Institute** (member)

**Wynne-Jackson, Inc.** (Director)

**YMCA of Loudoun County** (former Director)

## LECTURES & PUBLICATIONS:

### Guest Lecturer:
- Bank Lending Institute
- Barcelona Development Agency (Spain)
- Camara de Construccion (Chile)
- Camara de Inmobiliaria (Venezuela)
- CNN Sunday Morning
- George Mason University
- George Washington University
- Harvard University, Graduate School of Design
- Institute for Public Policy
- Joint U.S.- Polish Commission on Housing (Warsaw)
- Lincoln Institute of Land Policy
- Riyadh Development Authority (Saudi Arabia)
- Urban Development Institute of Australia (Sydney)
- Urban Land Institute

### Publications:
- Residential Development Handbook (contributing writer)
- Myths & Facts About Transportation (contributing writer)
- Urban Growth Management (contributing writer)
- Numerous political and professional articles

## ADVISOR ON GROWTH & DEVELOPMENT TO:
- Government of Bermuda
- Government of Emirate of Dubai
- Government of Mexico
- Government of The Netherlands
- Government of The United Kingdom
- City of Chicago, Illinois
- City of Charlotte, North Carolina
- City of Denver, Colorado
- City of Nantucket, Massachusetts
- City of Oklahoma City, Oklahoma
- Port Authority of New York & New Jersey
- University of Colorado
- Kingdom of Saudi Arabia
- The Vatican

## FRATERNAL, COMMUNITY & SOCIAL ORGANIZATIONS:

**Army-Navy Country Club (Washington, D.C.)**

**Aspen Center for Environmental Studies**

**Aspen Historical Society**

**Aspen Institute**

**National Trust for Historic Preservation**

**Naval Academy Alumni Association (Life member)**

**Naval Academy Athletic Association**

**Naval War College Foundation (Life member)**

**Newport Historical Society**

**Piedmont Environmental Council**

**Preservation Society of Loudoun County**

**Reserve Officers Association (Life member)**

**Rotary International**

**Union League Club (New York)**

## PERSONAL DATA:

| | |
|---|---|
| Languages: | Fluent in Spanish, some capacity in Italian and French |
| Marital Status: | Married with adult children |
| Citizenship: | United States |

| | |
|---|---|
| WORK: | 920-544-6900 |
| FAX: | 970-544-8426 |
| HOME: | |
| CELL: | |
| EMAIL: | JDeFrancia@LoweEnterprises.com |

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 20, 2011, I served by depositing same in the United States mail, first class postage prepaid a copy of the documents entitled **CLEARWATER DEVELOPMENT, INC.' MOTION FOR ENTRY OF ORDER APPROVING RETENTION OF CHIEF RESTRUCTURING OFFICER**, **notice and proposed order** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the Fed.R.Bankr.P. and these L.B.R. at the following addresses:

| | |
|---|---|
| United States Trustee's Office<br>Attn: Leo M. Weiss<br>999 18th Street, Suite 1551<br>Denver, Co 8020 | Clearwater Development, Inc.<br>4000 Gypsum Creek Rd.<br>Gypsum, CO 81637 |
| James DeFrancia<br>PO Box 12393<br>Aspen, CO 81612 | Custom Concepts, LLC<br>C/O Rick G Hermes<br>PO Box 2633<br>Edwards, CO 81632 |
| Kennedy Funding, Inc.<br>Attn: Jeffrey Wolfer/Tony Petruccello<br>Two University Plaza, Suite 402<br>Hackensack, NJ 07601 | Brightwater Club POA<br>P.O. Box 993<br>Eagle, CO 81631 |
| Todd Thomas<br>1417 White Hawk Ranch Drive<br>Boulder, CO 80303 | Imprimis Corp.<br>P.O. Box 1856<br>Palm Desert, CA 92261 |
| Guaranty Bank & Trust Co.<br>PO Box 5847<br>Denver, CO 80217-5847 | Simplot Partners<br>Dept. #1136<br>Los Angeles, CA 90084-1136 |
| US Bank<br>PO Box 790401<br>St Louis, MO 63179-0401 | Orval And Dorothy Paul<br>11404 East Imperial Highway<br>Norwalk, CA 90650 |
| L. Hatle Trust<br>PO Box 1856<br>Palm Desert, CA 92261 | Orval A. Paul Annuity Trust<br>11404 E. Imperial Hwy<br>Norwalk, CA 90650 |
| Malcolm Gray<br>11407 St. Germain Way<br>Houston, TX 77082 | Jay And Deborah Harper<br>400 Woodland Drive<br>Pauls Valley, OK 73075 |

Blakeslee Advertising & Marketing
916 North Charles Street
Baltimore, MD 21201

Don Dotson And Mary Palmtag
P.O. Box Box 4105
Gypsum, CO 81637

Benjamin, Bain & Howard, LLC
P.O. Box 370509
Denver, CO 80237-0509

Jim Murton
10330 SW 59 Avenue
Miami, FL 33156

Larry And Susan Boothby
4270 South Bellaire Circle
Englewood, CO 80113

Leslie And Faith Lerner
475 Split Rock Road
Syossest, NY 11791

Saliesh And Bhavna Patel
8584 155th Place North
Palm Beach Gardens, FL 33418

                                                      */s/ Tami Childers*
                                                   Tami Childers, Legal Assistant