IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| Clearwater Development, Inc. ) | Case No. 11-18725-HRT |
| EIN:  20-1538160 ) | |
| ) | |

**LIMITED OBJECTION TO DEBTOR'S MOTION FOR INTERIM AND FINAL ORDER APPROVING POST PETITION SECURED AND SUPERIORITY FINANCING**

Brightwater Club Property Owners Association, by and through its attorneys, Berenbaum Weinshienk PC, objects to the Debtor's Motion for Interim and Final Order Approving Postpetition Secured and Super Priority Financing (the "Motion") as follows.

## Background

1. By its Motion, Clearwater Development, Inc., ("Debtor") seeks approval for postpetition secured and superpriority financing (the "DIP -Loan") from EFO Financial Group, LLC (the "DIP Lender").

2. The proposed DIP Loan seeks to "prime" all existing liens and security interests on the Debtor's property other than Eagle County *ad valorum* taxes. In addition and according to the Commitment Letter attached to the Motion, the Motion also seeks to provide the DIP Lender with liens and security interests senior to the following interests:

> The priming mortgage liens and security interests in favor of Lender shall be senior to any and all other liens, mortgages and security interests encumbering said Collateral pursuant to 11 U.S.C. §§ 364 (d) and 364(c)(2).  Lender's mortgage liens and security interests in the Collateral **shall be senior to all other interests of any party**, including, without limitation, tax liens (except ad valorem taxes and existing Valague Metropolitan District, Eagle County, Co, General Obligation Limited Tax Bonds, Series 2008 ["C.I.D." liens] which C.I.D. liens shall have no right of acceleration upon default, said ad valorem and C.I.D. liens being hereafter referred to as the "Excepted Liens"), **the declaration of condominium, if any, and related instruments, and any and all covenants, deed restrictions, equitable servitudes or other rights in such Collateral as may be acceptable to Lender, its counsel and the Title Company (defined below)**.  Paragraph A, p. 5 of Commitment Letter.

3. Debtor owns 115 home sites, plus Tracts O and P, located in the Gypsum Creek Valley, Eagle County which is subject to judicial and statutory liens in favor of  Brightwater

Club Property Owners Association (the "Brightwater Club POA"), more specifically described as follows (the "Property"):

> PARCEL 1
> LOTS 45, 46, AND LOTS 63 THROUGH 68, INCLUSIVE; BRIGHTWATER CLUB FILING 2, ACCORDING TO THE PLAT RECORDED JUNE 20, 2005 AT RECEPTION NO. 919836, COUNTY OF EAGLE, STATE OF COLORADO.
>
> PARCEL 2
> LOTS 1 THROUGH 4, BLOCK K, INCLUSIVE; LOT 11, BLOCK K; LOTS 16 AND 17, BLOCK K; AND LOTS 23 THROUGH 40, BLOCK K, INCLUSIVE; BRIGHTWATER CLUB FILING 3, ACCORDING TO THE PLAT RECORDED SEPTEMBER 14, 2005 AT RECEPTION NO. 929490, COUNTY OF EAGLE, STATE OF COLORADO.
>
> PARCEL 3
> LOTS 2, 3, 5, 23, 24, AND LOTS 26 THROUGH 50, INCLUSIVE; BRIGHTWATER CLUB FILING 4, ACCORDING TO THE PLAT RECORDED APRIL 13, 2006 AT RECEPTION NO. 200609481, COUNTY OF EAGLE, STATE OF COLORADO.
>
> PARCEL 4
> LOTS 1 THROUGH 49, INCLUSIVE; LOTS 54, 57, AND 59; BRIGHTWATER CLUB FILING 5, ACCORDING TO THE PLAT RECORDED MAY 10, 2006 AT RECEPTION NO. 200612175, COUNTY OF EAGLE, STATE OF COLORADO.
>
> PARCEL 5
> TRACTS O AND P, BRIGHTWATER CLUB FILING 1, ACCORDING TO THE PLAT RECORDED MAY 18, 2005 AT RECEPTION NO. 916179, COUNTY OF EAGLE, STATE OF COLORADO.

4. Brightwater Club POA claims an interest superior in the Property to the interest of Kennedy Funding Inc. ("KFI") and the mechanics liens recorded against the Property by virtue of the terms of the Declaration of Covenants, Conditions, Restrictions and Easements for Brightwater Club POA recorded on September 8, 2005, at Reception No. 928910; and any and all recorded supplements and amendments thereafter with the records of the Eagle County Clerk and Recorder (the "Declaration").

5. Due to Debtor's default in paying assessments, the Property is subject to a statutory lien for unpaid assessments pursuant to the Declaration and pursuant to C.R.S. § 38-33.3-316. C.R.S. § 38-33.3-316(1) and (2) (b) provide:

2

(1) The association, if such association is incorporated or organized as a limited liability company, has a statutory lien on a unit for any assessment levied against that unit or fines imposed against its unit owner. Unless the declaration otherwise provides, fees, charges, late charges, attorney fees, fines, and interest charged pursuant to section 38-33.3-302(1)(j), (1)(k), and (1)(l), section 38-33.3-313(6), and section 38-33.3-315(2) are enforceable as assessments under this article. The amount of the lien shall include all those items set forth in this section from the time such items become due. If an assessment is payable in installments, each installment is a lien from the time it becomes due, including the due date set by any valid association's acceleration of installment obligations.

(2)(a) A lien under this section is prior to all other liens and encumbrances on a unit except:

(I) Liens and encumbrances recorded before the recordation of the declaration and, in a cooperative, liens and encumbrances which the association creates, assumes, or takes subject to;

(II) A security interest on the unit which has priority over all other security interests on the unit and which was recorded before the date on which the assessment sought to be enforced became delinquent, or, in a cooperative, a security interest encumbering only the unit owner's interest which has priority over all other security interests on the unit and which was perfected before the date on which the assessment sought to be enforced became delinquent; and

(III) Liens for real estate taxes and other governmental assessments or charges against the unit or cooperative.

(b) Subject to paragraph (d) of this subsection (2), a lien under this section is also prior to the security interests described in subparagraph (II) of paragraph (a) of this subsection (2) to the extent of:

(I) An amount equal to the common expense assessments based on a periodic budget adopted by the association under section 38-33.3-315(1) which would have become due, in the absence of any acceleration, during the six months immediately preceding institution by either the association or any party holding a lien senior to any part of the association lien created under this section of an action or a nonjudicial foreclosure either to enforce or to extinguish the lien.

(II) Deleted by Laws 1993, H.B.93-1070, § 21, eff. April 30, 1993.

Colo. Rev. Stat. Ann. § 38-33.3-316 (West)

6. Pursuant to C.R.S. § 38-33.3-316(2)(b)(I), Brightwater Club POA is entitled to a first priority lien on the Property in the amount equal the amount of Debtor's unpaid assessments incurred after September 8, 2005, which is prior to and superior to any mechanics lien filed after September 8, 2005.

7. On or about April 10, 2010, Brightwater Club POA filed a Complaint for Foreclosure Pursuant to Rule 105, C.R.C.P., captioned *Brightwater Club Property Owners Association v. Kennedy Funding, Inc; Clearwater Development, Inc., et al*, (District Court, Eagle County, Case No. : 2010CV 238, Division 2) (the "1st Superpriority Lien Complaint").

8. Pursuant to C.R.S. § 38-33.3-316(2)(b)(I), for the six-month period preceding the filing of its 1st Superpriority Lien Complaint (from November 10, 2009 through April 10, 2010), Brightwater Club POA is entitled to a first priority lien on the Property in the amount equal to $1,000 per lot/or tract (115 lots plus Tracts O & P) for a total of $115,000 (the "1st Super Priority Lien"), which is prior and superior to the lien of KFI and the mechanic liens filed against the Property.

9. On October 20, 2010, Brightwater Club POA filed a Complaint for Foreclosure Pursuant to Rule 105, C.R. C.P., captioned *Brightwater Club Property Owners Association v. Kennedy Funding, Inc; Clearwater Development, Inc., et al*, (District Court, Eagle County, Case No. : 2010CV 849, Division 2) (the "2nd Super priority Lien Complaint"). On March 28, 2011, the Court entered an Order and Decree of Judicial Foreclosure.

10. Pursuant to C.R.S. § 38-33.3-316(2)(b)(I), for the six-month period preceding the filing of its 2nd Superpriority Lien Complaint (from April 20, 2010 through October 20, 2010), Brightwater Club POA is entitled to a first priority lien in the amount equal to $1,000 per lot/or tract (115 lots plus Tracts O & P) for a total of $115,000 (the "2nd Super Priority Lien"), which is prior and superior to the lien of KFI and the mechanics liens filed against the Property.

11. Brightwater Club POA also intends to assert a super priority lien for the period of October 1, 2010 through the date of the Petition by way of filing with the Court a 546(b) Notice (the "3rd Super Priority Lien").

12. As of the Petition Date, Brightwater Club POA is entitled to following super priority liens on the Property, which are junior only to Eagle County's tax liens:

1st Super Priority Lien:

    Assessments                   $115,000.00
    Fees & Costs                21,156.43

|  |  |
|---|---|
| Interest | 21,664.07 |
| **Total** | $157,820.50 |

2nd Super Priority Lien

|  |  |
|---|---|
| Assessments | $115,000.00 |
| Fees & Costs | 16,349.95 |
| Interest | 10,207.80 |
| **Total** | $141,557.75 |

3rd Super Priority Lien

|  |  |
|---|---|
| Assessments | $112,598.80 |
| Interest | 7,245.00 |
| **Total** | $119,843.80 |

The 1st, 2nd and 3rd Super Priority Liens continue postpetition to accrue interest, late charges, fines, and attorney fees (the 1st, 2nd, and 3rd Priority Liens are hereinafter collectively referred to as the "Priority Liens").

## Objection

13. The Brightwater Club POA objects to the DIP loan to the extent that it seeks to prime the Priority Liens and the Declaration. The Brightwater Club POA also objects to the grant of a super-priority administrative claim pursuant to sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code.

14. Section 364(d) provides:

(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

(A) the trustee is unable to obtain such credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

(2) In any hearing under this subsection, the trustee has the burden of proof

on the issue of adequate protection.

15. The underlying purpose of the adequate protection requirement of section 364(d) of the Bankruptcy Code is to ensure that secured creditors are not deprived of the benefit of their bargain. The debtor should make certain that the pre-petition creditor receives the same level of protection it would have had absent post-petition super-priority financing. *In re Swedeland Dev. Group, Inc.,* 16 F.3d 552, 564 (3d Cir.1994) (en banc).

16. "As a general principle, the Bankruptcy Code recognizes the primacy of pre-petition contractual liens and seeks to preserve the financial interests created thereby." *In re Mosello,* 195 B.R. 277, 287 (Bankr.S.D.N.Y.1996). This policy is recognized by section 364(d) which permits the priming of an existing lien only as "a last resort." *In the Matter of Qualitech Steel Corp.,* 276 F.3d 245, 248 (7th Cir.2001). *See also In re Seth Co.,* 281 B.R. 150, 153 (Bankr.D.Conn.2002) ("ability to prime is extraordinary"). Because super-priority financing displaces liens on which creditors have relied, courts contemplating authorization of such financing "must be particularly cautious when assessing whether the creditors so displaced are adequately protected." *In re First South Sav. Ass'n,* 820 F.2d 700, 710 (5th Cir.1987).

17. While the presence of an equity cushion should be a relevant factor, it should not be a determinative factor in any "adequate protection" analysis, and particularly one relating to section 364(d)(1)(B). The important question, in determination of whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized. *See In re Grant Broadcasting of Philadelphia, Inc.,* 71 B.R. 376, 386–89 (Bankr.E.D.Pa.), *aff'd,* 75 B.R. 819 (E.D.Pa.1987); *In re Alyucan Interstate Corp.,* 12 B.R. 803, 809–12 (Bankr.D.Utah 1981).

18. "Adequate protection" as used in section 364(d) and other sections of the Bankruptcy Code may be provided by (1) periodic cash payments; (2) additional or replacement liens; or (3) other relief resulting in the "indubitable equivalent" of the secured creditor's interest. 11 U.S.C. § 361. The last category being a "catch all" allows the bankruptcy court discretion to fashion adequate protection on a case by basis. *In re Swedeland Development Group, Inc. at* 564. The term "indubitable equivalent" takes origin in a passage Judge Learned Hand penned in defining "adequate protection" under a predecessor statute:

> It is plain that 'adequate protection") must be completely compensatory.... [A] creditor who fears the safety of his principal will scarcely be content with [interest]; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most indubitable equivalence.

*Metro. Life Ins. Co. v. Murel Holding Corp.* (*In re Murel Holding Corp.*), 75 F.2d 941, 942 (2d Cir.1935) (though courts applying section 361(3) may not require adequate protection to be "of the most indubitable equivalence," they have required adequate protection to be "completely compensatory," or nearly so.) *See, e.g., Martin v. United States* (*In re Martin* ), 761 F.2d 472,

6

476 (8th Cir.1985) ( "[A] debtor, in structuring a proposal of adequate protection for a secured creditor, 'should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights.' " (quoting *Crocker Nat'l Bank v. Am. Mariner Indus., Inc.* (*In re Am. Mariner Indus., Inc.*), 734 F.2d 426, 435 (9th Cir.1984), *overruled on other grounds by United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *Citicorp N. Am., Inc. v. Murray* (*In re Chi., Mo. & W. Ry. Co.*), 109 B.R. 308, 313 (N.D.Ill.1989) ("Since Congress relied on [Hand's] passage in enacting section 361(3), we may presume that it wished adequate protection to be 'completely compensatory.' "); *In re Ziegler,* 88 B.R. 67, 70–71 (Bankr.E.D.Pa.1988).

19. To meet its burden under section 362(d)(1)(B), Debtor offers the Brightwater Club POA nothing that it already does not have, *i.e.,* a lien on Debtor's Property. Currently the Brightwater Club POA's liens are junior only to the property tax claims. There is no contemplated reorganization of this Debtor. This case is based solely upon a sale of the Property to an entity related to the principal of the Debtor. The Debtor has not demonstrated that the Property can be sold or will be sold for $7.4 M. Congress did not contemplate that a creditor could find its priority position eroded and *as compensation be offered an opportunity to recoup dependent upon the success of a business with inherent risky prospects."  Id. See also In re Windsor Hotel, LLC,* 295 B.R. 307, 314 (Bankr.C.D.Ill.2003) ("The authorization to prime an existing lien should not be read as authorization to increase substantially the risk of the existing lender in order to provide security for the new, post-petition lender.").

20. In the event there is no sale of the Property, the Brightwater Club POA Priority Liens will be junior to a $2.4 M lien, with the Brightwater Club POA lacking any ability to foreclose its Priority Liens on the Property. The Debtor does not try to establish that the decrease in the value of the Brightwater Club POA's *interests* caused by the priming lien is compensated, replaced, or substituted in any way. Any priming of its Priority Liens will significantly compromise its lien position and the availability of remedies to recover the unpaid assessment.

21. It was the intent of the Colorado general assembly to provide the homeowner/property owner associations with a six-month priority lien to protect its assessments. See. *BA Mortg., LLC v. Quail Creek Condo. Ass'n, Inc.*, 192 P.3d 447, 450 (Colo. Ct. App. 2008) ( Colorado Common Interest Ownership Act (the Act) was originally adopted in 1991. It was adopted, among other reasons, to provide stability to the finances of common interest communities by granting them a super-lien for unpaid assessments, and to provide uniformity and predictability to lenders in order to promote the availability of financing. § 38-33.3-102, C.R.S.2007). The Debtor and DIP lender are seeking to eliminate that priority without providing the Brightwater Club POA with the indubitable equivalent of its super priority liens.

22. As to the grant of liens and security interest to the DIP Lender that are senior to the Declaration, the Debtor has proposed no adequate protection and none could be provided. Neither Section 364 nor any other provision of the Bankruptcy Code grants the Court authority to approve a DIP loan that grants a DIP lender liens and security interest senior to the

Declaration or any other covenant, deed restrictions, equitable interests or other rights. Section 364 addresses only the grant of administrative claims and liens to a DIP lender.

23. And finally, the Brightwater Club POA objects to the grant of super priority administrative expense claim. The Debtor continues to fail to pay assessments. The Brightwater Club POA is entitled to an administrative expense claim for assessment owed post-petition. *In re Vista Ridge Development,* 2010 WL 5154221 (10th Cir.BAP 2010) (unpublished decision); *In re Lenz,* 90 B.R. 458 (Bankr.D.Colo. 1988)**.** According to the representations of the Debtor as to the encumbrances on the Property, the DIP Lender is adequately protected without the grant of a super priority administrative claim**.** No justification is provided by the Debtor to grant such a priority.

Dated this 25th day of April, 2011.

           **BERENBAUM WEINSHIENK PC**

           *S/ M. Frances Cetrulo*
           M. Frances Cetrulo
           370 17th Street
           Republic Plaza - 48th Floor
           Denver, CO 80202
           Tel.: (303) 825-0800
           Fax: (303) 629-7610
           E-Mail: fcetrulo@bw-legal.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 25th day of April, 2011, I caused to be served by prepaid First Class Mail or Electronic Notice a copy of the **LIMITED OBJECTION TO DEBTOR'S MOTION FOR INTERIM AND FINAL ORDER APPROVING POST PETITION SECURED AND SUPERIORITY FINANCING** on the parties in interest listed herein:

United States Trustee's Office
Attn: Leo M. Weiss
999 18th Street, Suite 1551
Denver, CO 80202-2415

Eagle County Treasurer
P.O. Box 479
Eagle, CO 81631-0479

Joseph G. Rosania
Joli A. Lofstedt
950 Spruce St.
Ste. 1C
Louisville, CO 80027

Kennedy Funding, Inc.
Attn: Jeffrey Wolfer/Tony Petruccello
Two University Plaza, Suite 402
Hackensack, NJ 07601

*/s/Melanie R. Baum*
Melanie R. Baum